**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TOM E. PEARSON,**

                                **Plaintiff,**

    **vs.**                                          **1:10-CV-00521**
                                                         **(MAD)**

**MICHAEL J. ASTRUE, Commissioner of**
**Social Security,**

                               **Defendants.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

LEGAL AID SOCIETY OF NORTHEASTERN    Mary M. Withington, Esq. of Counsel
NEW YORK, INC.
112 Spring Street, Suite 109
Saratoga Springs, New York 12866
_Attorneys for Plaintiff_

Social Security Administration               Sandra M. Grossfeld
Office of Regional General Counsel        Special Assistant U.S. Attorney
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
_Attorneys for Defendant_

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

      Plaintiff Tom E. Pearson, brings the above-captioned action pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), seeking a review of the Commissioner of Social Security's decision to

deny his applications for disability insurance benefits ("DIB") and supplemental social security

("SSI").

## BACKGROUND

On September 18, 2007, plaintiff protectively filed an application for DIB and SSI

benefits.  (Administrative Transcript at p.13, 88-95).[1]  Plaintiff was 43 years old at the time of the

applications with past work experience as a case manager for an insurance agency.  In 1992,

plaintiff attended Schenectady Community College and obtained an Associate's Degree. (T. 255).

Plaintiff attended Syracuse University and obtained a Bachelor's Degree and a Master's Degree

in Business Administration. (T. 255).  Plaintiff claimed that he was disabled, beginning on

December 1, 2004, due to depression, oppositional defiance disorder, attention deficit disorder,

knee pain, diabetes and carpal tunnel syndrome.  On March 14, 2008, plaintiff's applications were

denied and plaintiff requested a hearing by an ALJ which was held on August 31, 2009.  (T.13;

49-56).  On October 8, 2009, the ALJ issued a decision denying plaintiff's claim for benefits.  (T.

13-23).  The Appeals Council denied plaintiff's request for review on March 5, 2010 making the

ALJ's decision the final determination of the Commissioner. (T. 1-5).  This action followed.

## DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to

individuals with "disabilities."  The Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not less than

12 months."  42 U.S.C. § 423(d)(1)(A).  There is a five-step analysis for evaluating disability

claims:

> "In essence, if the Commissioner determines (1) that the claimant is
> not working, (2) that he has a 'severe impairment,' (3) that the
> impairment is not one [listed in Appendix 1 of the regulations] that
> conclusively requires a determination of disability, and (4) that the
> claimant is not capable of continuing in his prior type of work, the

---

[1] "(T. )" refers to pages of the administrative transcript, Dkt. No. 8.

> Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131.  Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  The Court may also set aside the Commissioner's decision when it is based upon legal error.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity since the alleged onset date, December 1, 2004. (T. 15).  At step two, the ALJ concluded that plaintiff suffered from major depression, oppositional defiance disorder and attention deficit disorder, all of which qualified as "severe impairments" within the meaning of the Social Security Regulations (the "Regulations").  (T. 15).  At the third step of the analysis, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or equal the severity of any impairment listed in Appendix 1 of the Regulations.  (T. 16).  The ALJ found that plaintiff had the residual functional capacity ("RFC") to, "perform a full range of work at all exertional levels but with the following nonexertional impairments: simple work in a low contact with the public setting".  (T. 17-18).  At step four, the ALJ concluded that plaintiff was unable to perform his past relevant work.  (T. 21).  At step five, relying on the medical-vocational guidelines ("the grids") set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ

found that plaintiff had the RFC to perform jobs existing in significant numbers in the national economy.  (T. 22).  Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act.  (T. 23).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the ALJ committed reversible error in failing to find that plaintiff's mental impairments met or medically equaled a listed impairment; (2) the ALJ erred when he failed to find that plaintiff's carpal tunnel syndrome was a severe impairment; (3) the Appeals Council improperly rejected "new evidence" relating to plaintiff's carpal tunnel syndrome; (4) the ALJ failed to consider plaintiff's impairments "in combination" at Step Three of the analysis; and (5) the Commissioner did not sustain his burden at the fifth step of the sequential evaluation process. (Dkt. No. 10).

## I.   Severity of Impairments at Step Two

"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416 .925(a).  If a claimant's impairment or combination of impairments meets or equals a listed impairment, the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience. *Campbell v. Astrue*, 2009 WL 2152314, at *4 (N.D.N.Y. 2009) (citing 20 C .F.R. § 416.920(a)(4)(iii)).  A "severe" impairment is one that significantly limits an individual's physical or mental ability to do basic work activities.  *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) (citing 20 C.F.R. §§ 404.1520( c ), 416.920( c )). The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include,

> (1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;

> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b); *see also* Social Security Ruling 85–28, 1985 WL 56856, at *3–4, Titles II and XVI: Medical Impairments That Are Not Severe (S.S.A.1985).

Plaintiff has the burden at step two in the sequential evaluation process to demonstrate the severity of his impairment. *See* 20 C.F.R. § 404.1520( c ). The severity analysis at step two may do no more than screen out *de minimis* claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995). The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue*, 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y.1995)).

"When evaluating the severity of mental impairments, the regulations require the ALJ to apply a 'special technique' at the second and third steps of the review, in addition to the customary sequential analysis." *Lint v. Astrue*, 2009 WL 2045679, at *4 (N.D.N.Y. 2009) (citing *Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a)).  First, the ALJ must evaluate the claimant's symptoms, as well as other signs and laboratory findings, and determine whether the claimant has a "medically determinable mental impairment."  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); *see also Dudelson v. Barnhart*, 2005 WL 2249771, at *12 (S.D.N.Y. 2005).  If a medically determinable impairment exists, the ALJ must "rate the degree of functional limitation resulting from the impairment [ ]."  20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   This process requires the ALJ to examine all relevant clinical and laboratory findings, as well as the effects of the symptoms on the claimant, the impact of medication and its side effects, and other evidence relevant to the impairment and its treatment. 20 C.F.R. §§

404.1520a(c)(1), 416.920a(c)(1).  The ALJ must rate the degree of the claimant's functional limitation in four specific areas, referred to as "Paragraph B" criteria: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  The ALJ rates the first three areas on a five-point scale of "none," "mild," "moderate," "marked," and "extreme," and the fourth area on a four-point scale of "none," "one or two," "three," and "four or more." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  If the first three areas are rated as "none" or "mild," and the fourth as "none," the ALJ will conclude that the mental impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

A diagnosis of a mental impairment, such as depression, without more, does not suggest that a plaintiff's mental impairment severely impairs his performance of any major life activity. *See Torres v. Astrue*, 550 F.Supp.2d 404, 411 (W.D.N.Y. 2008).  The medical evidence must show that the mental impairment precludes a plaintiff from performing basic mental work activities.  *See Snyder v. Astrue*, 2009 WL 2157139, at *4 (W.D.N.Y. 2009).  Moreover, evidence that medication provides relief from the severity of a mental condition can provide substantial evidence to support a finding that a plaintiff is not disabled.  *Pennay v. Astrue*, 2008 WL 4069114, at *5 (N.D.N.Y. 2008).

**A.     Relevant Medical Evidence**

In February 2007, plaintiff underwent an Initial Psychiatric Evaluation at Glens Falls Hospital Behavioral Health Outpatient Center ("BHOC").[2]  (T. 361).  Plaintiff described a history of substance and alcohol abuse and several attempts at rehabilitation.  Plaintiff claimed he was sober and in recovery for two years.  Plaintiff also discussed his legal problems including a recent arrest for burglary for which he claimed he was currently serving probation.  Plaintiff complained of being depressed and admitted to a history of violence while using drugs with one prior suicide attempt.  Plaintiff was diagnosed with adjustment disorder with depressed mood and poly substance abuse. (T. 362).  Plaintiff was admitted to the BHOC, referred for individual therapy and prescribed Ambien.  On March 7, 2007, Arshad William, M.D. prepared a Progress Note stating that plaintiff was "huffing solvents" and would like to go to "rehab". (T. 363).  Plaintiff was given a referral for a drug rehabilitation program.

In April 2007, plaintiff was admitted as an outpatient at Conifer Park.  Plaintiff was referred for problems involving "inhalants - air dusters". (T. 221).  During his initial evaluation, plaintiff admitted to overdosing on drugs, experiencing suicidal thoughts, attempting suicide resulting in hospitalization and a history of being molested by family members. (T. 226).  On intake, plaintiff was diagnosed with alcohol, cocaine and opioid dependency as well as problems with interpersonal skills. (T. 221).[3]

On November 26, 2007, plaintiff sought treatment at Four Winds in Saratoga for airduster dependence and increased symptoms of depression. (T. 270).  Plaintiff stated that he had "no purpose in life".  Plaintiff discussed his criminal history and stated that he was treating with Suzanne O'Brien at Conifer Park.  (T. 270).  Plaintiff was admitted for treatment for depressed

---

[2] The name of the evaluator is illegible.

[3] The record contains Progress Notes from Psychiatric Evaluations from May 2007 through November 2007. However, the records and name of the author are illegible.

mood and polysubstance abuse and met with a therapist once a week. (T. 292).  The therapist

noted that plaintiff had difficulty articulating his feelings, was angry and could not communicate

effectively. (T. 293).   Plaintiff had difficulties in "group settings" and was unable to

communicate in a non-threatening way.  Upon discharge on December 17, 2007, plaintiff's

primary therapist, Glenn J. Dorman and Jack Dodd, Medical Director/Psychiatrist, diagnosed

plaintiff with depressive disorder and polysubstance abuse; borderline diabetes and psychosocial

and environmental problems. (T. 292).  Upon discharge, plaintiff was prescribed Trazadone,

Prozac, Wellbutrin and Lamictal.[4]  (T. 292).

Kimberly Brayton, J.D., Ph.D., examined plaintiff three times (November 13th, 15th, 20th)

in 2007. (T. 254).  Plaintiff was "self referred" and sought a "better understanding of his

psychological functioning".  Dr. Brayton conducted neuropsychological and personality tests.

She opined that plaintiff's IQ was 118.  Plaintiff performed in the high average range on

neurological testing with superior performance in the areas of perceptual organization and

working memory intensive tasks. (T. 258).  Dr. Brayton found that plaintiff was experiencing a

great amount of depressive emotional stress and as a result, behaved irrationally and exhibited

poor judgment.  Dr. Brayton diagnosed plaintiff with depression (recurrent, moderate);

polysubstance abuse; oppositional defiance disorder and a personality disorder with depressive

traits. (T. 258).

---

[4] Trazadone is an antidepressant used to treat major depressive episodes with or without prominent anxiety. *Dorland's Illustrated Medical Dictionary*, 1983 (31st Ed. 2007). Prozac is used in the treatment of depression and obsessive-compulsive disorder. *Id*. at 730, 1562.  Wellbutrin is used as an antidepressant and as an aid in smoking cessation to reduce the symptoms of nicotine withdrawal. *Id*. at 265, 2107.  Lamictal is an anti-convulsant used to treat partial seizures and bipolar disorders in adults.  *Id*. at 1014, 1017; http://www.pdr.net (last visited February 14, 2012).

On December 17, 2007, plaintiff's primary care physician, Dr. David Foote, completed a form for the New York State Department of Temporary Disability Assistance Division of Disability Determinations. (T. 265). The doctor opined, "other than mild hyperlipidemia and depression, I know of no other significant disability on this patient". (T. 266).

On January 7, 2008, plaintiff returned to the BHOC after undergoing drug rehabilitation at Conifer Park. (T. 358). Plaintiff reported that he was sober for ten months. Plaintiff complained of problems with attention and impulsivity and was diagnosed with distractibility and dysphoria. (T. 359). Plaintiff was initially prescribed Strattera but due to intolerance, the prescription was changed to Adderall.[5] (T. 391). From January 2008 through February 2009, plaintiff's prescriptions were monitored and altered as needed. During that time, plaintiff was prescribed various medications including Lamictal, Wellbutrin and Zoloft.[6] (T. 381).

On January 22, 2008, at the request of the agency, plaintiff was examined by Thomas Osika, Ph.D. (T. 298). Upon examination, plaintiff was alert and oriented with no signs of obsessions, compulsions or phobias. Plaintiff denied experiencing suicidal or homicidal ideations. Plaintiff reported that he attended Alcoholic Anonymous meetings daily and handled his own money. Dr. Osika diagnosed plaintiff with Bipolar Disorder and Alcohol Dependence (in remission). Dr. Osika opined that due to his impulse control and temper, plaintiff would have difficulties working with other people. (T. 301). However, plaintiff had the ability to understand and complete simple directions with difficulty with more complex directions.

---

[5] Strattera and Adderall are indicated for the treatment of attention-deficit disorder with hyperactivity ("ADHD"). http://www.pdr.net (last visited February 14, 2012).

[6] Zoloft is an antidepressant. *Dorland's* at 1854.

On June 5, 2009, plaintiff treated with Rosario Alcera, M.D. at BHOC.  The doctor noted that plaintiff's depression, distractibility and restlessness were under control with medication. (T. 405).  The doctor also noted that plaintiff's substance abuse had been in full remission since April 2007.  (T. 406).

###### B.       Analysis

Plaintiff claims that the ALJ committed reversible error when he failed to find that plaintiff's impairments met or medically equaled the listed impairments for 12.04 (Depression); 12.08 (Personality Disorder) and 12.09 (Substance Addiction Disorders).  Specifically, plaintiff argues that he has marked difficulties in maintaining social functions and marked difficulties in maintaining concentration, persistence and pace. (Dkt. No. 10, p. 17).

The ALJ considered and found that plaintiff did not meet the listings for 12.04 and 12.09. (T. 16).  The ALJ discussed the "Paragraph B" criteria and concluded that plaintiff has a mild restriction in the activities of daily living; moderate difficulties in social functioning; and mild difficulties with regard to concentration, persistence and pace. (T. 17).  The ALJ also found that plaintiff did not experience any episodes of decompensation for an extended duration. (T. 17). The ALJ also found that plaintiff did not satisfy the "Paragraph C" requirements.

With regard to social functioning and concentration, persistence and pace, the ALJ found:

> The treatment records document the claimant had difficulties in a group setting due to his difficulty interacting with others in a non-threatening manner.  No other social deficits are noted in the record.
>
> The records documents [sic] very little in the way of deficits in this area. Psychological evaluations have not noted any significant deficits nor has claimant alleged any.  He is maintained on adderall and has repeatedly stated he is doing well.  He has not reported any difficulties attending to tasks and has stated that with medication, he does quite well. (T. 17).

The Court has conducted an extensive review of the record and for the following reasons, finds that the ALJ's determination at Step Two is not supported by substantial evidence.

### 1.    Duty to Develop Record

In the paragraphs addressing the severity of plaintiff's mental impairments, the ALJ did not cite to any records, reports or opinions from any treating physician or any consultative examiner as support for these conclusions.  While the record contains a plethora of medical reports and progress notes, the record lacks a Medical Source Statement ("MSS") or mental RFC Assessment from any treating or examining physician.

An ALJ has an obligation to develop the administrative record, including, in certain circumstances, recontacting a source of a claimant's medical evidence, *sua sponte*, to obtain additional information.  *Lukose v. Astrue*, 2011 WL 5191784, at *3 (W.D.N.Y. 2011) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)).  The ALJ will obtain additional evidence if he/she is unable to make a determination of disability based on the current record.  20 C.F.R. § 404.1527(c)(3). The Regulations provide:

> If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information. We will consider any additional evidence we receive together with the evidence we already have.

20 C.F.R. § 404.1527(c)(3).

This duty exists regardless of whether the claimant is represented by counsel.  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  "The duty to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician'

provisions in the regulations." *Dickson v. Astrue*, 2008 WL 4287389, at \*13 (N.D.N.Y. 2008).

The caselaw in this Circuit is clear as courts have consistently held that if the record does not

contain any Medical Source Statement or RFC Assessment from plaintiff's treating physician, the

ALJ has a duty to contact plaintiff's treating physician in an attempt to obtain an assessment. *See*

*Pitcher v. Barnhart*, 2009 WL 890671, at \*14 (N.D.N.Y. 2009) (an MSS or RFC from the treating

physician was important because the ALJ granted the other physician's MSS "moderate weight,"

and the only other individual to assess Plaintiff's RFC was a disability analyst); *see also Hopper*

*v. Comm'r of Soc. Sec.*, 2008 WL 724288, at \*11 (N.D.N.Y.2008); *see also Dickson*, 2008 WL

4287389, at \*13.  This duty also includes advising the plaintiff of the importance of such

evidence.  *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y. 2004) ("[a]t a minimum, if the

ALJ is inclined to deny benefits, he should advise a claimant that her case is unpersuasive and

suggest that she supplement the record or call her treating physician as a witness") (citation

omitted).  The Regulations provide that, "[t]he Commissioner should request an MSS from the

claimant's treating physician if such a statement has not been provided. *Outley v. Astrue*, 2010

WL 3703065, at \*4 (N.D.N.Y. 2010) (citing 20 C.F.R. § 416.912(d) (explaining that the

Commissioner will "make every reasonable effort to help you get medical reports from your own

medical sources, a medical report should include an MSS").   In decisions involving the ALJ's

duty to obtain an MSS, courts frequently cite to Judge Spatt's explanation in *Peed v. Sullivan*:

> What is valuable about the perspective of the treating physician—what
> distinguishes him from the examining physician and from the ALJ—is
> his opportunity to develop an informed opinion as to the physical
> status of a patient. To obtain from a treating physician nothing more
> than charts and laboratory test results is to undermine the distinctive
> quality of the treating physician that makes his evidence so much more
> reliable than that of an examining physician who sees the claimant
> once and who performs the same tests and studies as the treating
> physician.

*Peed v. Sullivan*, 778 F. Supp 1241, 1246 (E.D.N.Y.1991).

"Although the regulation provides that the lack of such a [MSS] statement will not render a report incomplete, it nevertheless promises that the Commissioner will request one." *Johnson v. Astrue,* 2011 WL 4348302, at *10 (E.D.N.Y. 2011) (citations omitted).   The ALJ must request such a statement regardless of whether the record contains a complete medical history. *Id*. (citing § 404.1513(b)(6)).   The failure to contact the physicians constitutes a breach of the ALJ's duty to develop the record and provides a basis for remand. *Lawton v. Astrue*, 2009 WL 2867905, at *16 (N.D.N.Y. 2009).

Here, plaintiff does not argue that the matter should be remanded due to the absence of functional evaluations or the ALJ's duty to develop the record.  However, having reviewed the record and the proceedings before the agency, the Court must address this issue.  The record contains reports and treatment notes from therapists and psychiatrists at Four Winds and Conifer Park and reports/treatment notes from at least three physicians who could be defined as "treating physicians":  Dr. Brayton, Dr. William and Dr. Alcera.  The record does not contain any MSS or Mental RFC Assessment from any of plaintiff's treating physicians.  While the ALJ summarized the medical reports and evidence from these therapists and physicians, the ALJ did not acknowledge the lack of opinion evidence and made no efforts to contact any of the treating physicians to obtain assessments.  Moreover, during the administrative hearing, the ALJ did not advise plaintiff of the importance of obtaining this information.

Plaintiff has an extensive history of polysubstance abuse and suffers from well documented and diagnosed mental health impairments, some of which the ALJ found to be "severe" impairments at Step Two of the analysis.  Plaintiff's treating physicians are specialists in their respective areas of medicine and consistently diagnosed plaintiff with polysubstance abuse,

"depressive disorder", "psychosocial and environmental problems", "depression", "oppositional defiance disorder" and a "personality disorder with depressive traits". In some instances, these physicians provided plaintiff with continuous treatment and therapy over the course of several months. This evidence, coupled with the number and variety of potent medications prescribed during the disability period, should have prompted the ALJ to contact the treating physicians and/or psychiatrists to obtain an assessment of plaintiff's mental functional limitations. Given the nature of plaintiff's impairments, the opinions of his treating psychiatrists are important. *See Jones v. Apfel*, 66 F.Supp.2d 518, 541 (S.D.N.Y. 1999) (citing *Prentice v. Apfel*, 11 F.Supp.2d 420, 427 (S.D.N.Y. 1998) (remanding where ALJ did not elicit information about the nature or severity of plaintiff's depression from plaintiff's doctors despite the mandate in 20 C.F.R. § 404.1512 that the Administration 'will re-contact your treating physician [when] ... the report does not contain all the necessary information")).

Without an assessment of plaintiff's mental RFC, from any physician or provider, the Court is constrained to find that the ALJ's determination at Step Two is supported by substantial evidence. Indeed, due to the ALJ's failure to address this omission or to comment on the weight afforded to any opinion (other than the disability determination from Washington County), the Court is unable to ascertain what evidence the ALJ considered or relied upon in reaching the conclusions at Step Two. Upon remand, the ALJ shall attempt to obtain functional evaluations from plaintiff's treating physicians and properly analyze the opinions of the treating physicians according to the Commissioner's Regulations.

   **2.       Failure to Assign Weight to Any Opinion**

In addition to failing to adequately develop the record, the ALJ erred because he failed to assign any weight to any opinion, treatment notes or records.  The Regulations require an ALJ to "evaluate every medical opinion."  20 C.F.R. § 416.927(d); *see* 20 C.F.R. § 416.927(a)(2). The ALJ summarized the conclusions and opinions expressed by the consultative examiners, Drs. Osika and Stein but did not assign any weight to their opinions.   Moreover, an independent review of the record reveals a Psychiatric Review Technique ("PRT") and Mental RFC Assessment completed, at the request of the agency, by "T. Bruni, Psychology" on March 13, 2008. (T. 308, 328).  The ALJ did not acknowledge or address these evaluations anywhere in his decision.  In the PRT, the non-examining reviewer found that plaintiff did not meet any relevant listing and concluded that plaintiff suffered from mild restrictions of daily living, moderate difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence and pace and suffered from one or two repeated episodes of deterioration. (T. 318). The reviewer opined, "despite a severe psychiatric impairment, the claimant is able to understand and remember simple instructions, sustain attention and concentration for simple tasks, respond and relate adequately to others in a low-contact setting, and adapt to simple changes". (T. 330).

Comparing the ALJ's findings with the non-examining consultant's opinion, it is clear that the ALJ relied, at least in part, on some of the non-examining consultant's opinions.  Despite the similarities between the opinions and the ALJ's conclusions, the ALJ inexplicably failed to assign any weight to the non-examining reviewer's opinions.  *Babcock v. Barnhart*, 412 F.Supp.2d 274, 281-283 (W.D.N.Y. 2006) (citing *Torregrosa v. Barnhart*, 2004 WL 1905371, at *6 (E.D.N.Y. 2004) (finding that in the absence of a treating source's opinion, there is more reason for the ALJ to discuss the opinions of the examining doctors and to explain the weight afforded to those opinions)).  Indeed, the ALJ did not cite to, summarize or even mention these evaluations.

15

The ALJ's failure to assign weight or to explain the weight he afforded to any conclusions or opinions was legal error requiring remand. *Serianni v. Astrue*, 2010 WL 786305, at *10 (N.D.N.Y. 2010) (citing *White v. Sec'y of Health & Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990) (holding that if an ALJ fails to provide the basis for his RFC determination, a reviewing court may vacate that decision)). On remand, the ALJ should consider the Regulations and assign and explain the weight afforded to all of the opinion evidence.

### C.   Evaluation of Opinion Evidence from Another Governmental Agency

The record includes "A Notice of Medical Assistance Disability Determination" dated November 17, 2008, completed by a physician and social worker for the Washington County Department of Social Services. (T. 341). Plaintiff argues that while the ALJ was not bound by this determination, there was no rational basis for the ALJ to reach the opposite conclusion in this case.

"While the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered." *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975). In the Determination, the physician diagnosed plaintiff with "ADHD, Depression, Personality Disorder and Carpal Tunnel Syndrome". (T. 342). The reviewers also found that plaintiff satisfied Listing 12.08 for Personality Disorders. The Notice indicates that plaintiff was "determined disabled with an effective date of disability of November 14, 2008". The ALJ acknowledged and specifically assigned "less than controlling weight" to the determination:

> They said he "meets Listing 12.08 Personality Disorders", but gave no supporting documentation or medical evidence regarding that determination or by whom it was made. This is an opinion on an issue reserved to the Commissioner. Therefore, the opinion is not entitled to controlling weight or special significance (SSR 95-5P). (T. 21).

16

Plaintiff offers conclusory arguments and does not cite to any objective medical evidence that supports this determination by Washington County Department of Social Services.  Based upon the record, the Court finds that the ALJ considered, explained and assigned the appropriate weight to the determination.  Thus, the ALJ is not required to address this issue on remand.

To summarize, the ALJ's determination at Step Two, with relation to plaintiff's mental impairments, is not supported by substantial evidence.  This matter is remanded to the ALJ for further proceedings consistent with the analysis above.

## II.    Severity of Carpal Tunnel Syndrome at Step Two

Plaintiff argues that the ALJ erred when he determined that plaintiff's carpal tunnel syndrome was not a "severe impairment".  In this regard, plaintiff also argues that additional information submitted to the Appeals Council supports plaintiff's claims and should have been considered as part of the record herein. (Dkt. No. 10, p. 20).

### A.    Medical Evidence

In November 2007, plaintiff returned to "discuss Zoloft". (T. 346).  In August 2008, plaintiff complained of numbness in his hands.  Dr. Foote diagnosed plaintiff with carpal tunnel syndrome and referred plaintiff for an EMG.

On December 17, 2007, Dr. Foote completed a form for the New York State Department of Temporary Disability Assistance Division of Disability Determinations. (T. 265).  Dr. Foote provided an opinion based upon his most recent examination of plaintiff six months prior, on August 13, 2007.  At that time, plaintiff's examination and laboratory tests were "normal".  The doctor opined, "other than mild hyperlipidemia and depression, I know of no other significant disability on this patient". (T. 266).

On December 19, 2008, Dr. Foote referred plaintiff for EMG studies at Glens Falls Hospital.  (T. 352).   The report of the study indicates, "abnormal study with evidence of moderate carpal tunnel syndrome bilaterally right worse than left" and "moderate ulnar neuropathy on left with decreased conduction velocity across the elbow and active denervation on the left". (T. 352).  On December 30, 2008, plaintiff returned to Dr. Foote to evaluate the results of the study. (T. 344).

### B.      Analysis

The ALJ discussed plaintiff's bilateral carpal tunnel syndrome and found that the conditions were not medically severe impairments.  The ALJ concluded, "claimant has not alleged any limitations due to either of these conditions nor do the records document any ongoing problems or complaints with respect to them".  (T. 16).  The ALJ cited to records and testing from Glens Falls Hospital in support of this determination.

Even though plaintiff was diagnosed with carpal tunnel syndrome, plaintiff failed to demonstrate that his carpal tunnel syndrome significantly limited his ability to do basic work activities.  *See Hulbert v. Comm'r of Soc. Sec.*, 2009 WL 2823739, at *10 (N.D.N.Y. 2009).  Moreover, plaintiff's daily activities do not establish that plaintiff suffered a severe impairment in this regard.  During the administrative hearing, plaintiff testified that he is able to drive and volunteers at a hospital two to three days a week.  (T. 33, 38, 369).   Plaintiff previously told Dr. Stein that he is able to care for his own needs and helps his mother with housework.  Upon review of the record, the Court finds substantial evidence supporting the ALJ's determination.

### C.      New Evidence

The Appeals Council shall consider evidence that is "new and material and relates to the period on or before the ALJ's decision." *Perez*, 77 F.3d at 45 (citing 20 C.F.R. §§ 404.970(b) and 416.1470(b). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Hickman ex rel. M.A.H. v. Astrue*, 728 F.Supp.2d 168, 182 (N.D.N.Y. 2010) (citing 20 C.F.R. §§ 404.970(b); 416.1470(b)). "'Weight of the evidence' is defined as the balance or preponderance of evidence; the inclination of the greater amount of credible evidence to support one side of the issue rather than the other." *Id*. (citing HALLEX: Hearings, Appeals and Litigation Manual I-3-3-4 (S.S.A.2009) available at http:// www. ssa. gov/ OP_ Home/ hallex/ I- 03/ I- 3- 3- 4. html).   Even if the Appeals Council denies review, evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record to be considered on judicial review. *Perez*, 77 F.3d at 45. The role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision. *Edwards v. Astrue*, 2010 WL 3701776, at *7, n.12 (N.D.N.Y. 2010) (citation omitted).

Although the new evidence submitted to the Appeals Council forms part of the administrative record under review, it does so only to the extent that it relates to the time frame encompassed in the ALJ's decision. *Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002). "Materiality requires that the new evidence not concern 'a later-acquired disability or the subsequent deterioration of the previous non-disabling condition'". *Estevez v. Apfel*, 1998 WL 872410, at *7 (S.D.N.Y. 1998).  The Regulations provide:  "[i]f you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application." 20

C.F.R. §§ 404.976(b) (1), 416.1476(b)(1); *see also Robins v. Astrue*, 2011 WL 2446371, at *5

(E.D.N.Y. 2011); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (the

plaintiff is free to file a new application for benefits, pursuant to the relevant regulations, and to

present new evidence of his disability at that time).

      In the March 2010 notice, the Appeals Council discussed the evidence considered:

> We [ ] looked at medical records from Glens Falls Hospital, dated
> November 20, 2009 through January 26, 2010 and Adirondack
> Rehabilitation Medicine, PLLC, dated January 7, 2010.   The
> Administrative Law Judge decided your case through October 8, 2009.
> This new information is about a later time.   Therefore, it does not
> affect the decision about whether you were disabled beginning on or
> before October 8, 2009.   If you want us to consider whether you were
> disabled after October 8, 2009, you need to apply again.

      Plaintiff argues that the Appeals Council should have considered evidence relating to his

additional treatment for carpal tunnel syndrome because, "the level of severity of this particular

impairment had increased from the alleged onset date through the Appeals Council review and

resulted in two operations post hearing". (Dkt. No. 10, p. 21).  Plaintiff's claims lack merit.

Evidence of a deteriorating condition is not material to the ALJ's decision if it is documented

after the ALJ rendered the decision.  *Quinlivan v. Comm'r of Soc. Sec*., 2011 WL 2413491, at *8

(N.D.N.Y. 2011) (if the plaintiff suffered an aggravation, the proper remedy would be to submit a

new application).  The Appeals Council properly concluded that the evidence did not provide a

basis to remand the ALJ's decision.  Accordingly, the Court denies plaintiff's request for remand

on this issue.

**III.**     **Combination of Impairments**

Plaintiff claims that the ALJ erred when he failed to consider plaintiff's mental health impairments in combination with one another. Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. *Dickson v. Comm'r of Soc. Sec.*, 2008 WL 553208, at * (N.D.N.Y. 2008) (citing 20 C.F.R. §§ 404.1523, 416.923)); *see also Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).

Based upon the analysis in Part II, the Court rejects plaintiff's argument that the ALJ erred when he failed to properly consider his carpal tunnel syndrome to be among the combination of impairments. However, because Court has ordered remand on the issue of the severity of plaintiff's mental impairments at Step Two, the analysis at Step Three, with respect to mental impairments only, must be addressed. The receipt of additional evidence may impact upon what impairments are considered "severe" at step two, as well as whether any of the impairments, alone or in combination, would qualify at step-three of the determination. *See Elhanafi, v. Barnhart*, 2007 WL 602391, at *5-6 (E.D.N.Y. 2007) (the ALJ's improper application of the treating-physician calls into question the remaining steps of the analysis). Accordingly, on remand the ALJ is directed to revisit the issue of plaintiff's mental impairments at Step Three.

## IV.   Vocational Expert

Generally speaking, if a claimant suffers only from exertional impairments, then the Commissioner may satisfy his burden by resorting to the applicable grids.[7] *Pratt v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). The grids "take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience". *Rosa*, 168 F.3d

---

[7] An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. §§ 404.1569a(b), 416.969a(b); see also Rodriguez v. Apfel, 1998 WL 150981, at *10, n. 12 (S.D.N.Y.1998).

at 79.  Ordinarily, the ALJ need not consult a vocational expert, and may satisfy this burden "by resorting to the applicable medical vocational guidelines (the grids)".  *Id*. at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App.2).

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids.[8] *Bapp v. Bowen,* 802 F.2d 601, 605 (2d Cir.1986). The testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work-over and above any incapacity caused solely from exertional limitations-so that he is unable to perform the full range of employment indicated by the medical vocational guidelines."  *Id.* The use of the phrase "significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity".  *Id*. at 606. Under these circumstances, to satisfy his burden at step five, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform ." *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 604). Therefore, when considering nonexertional impairments, the ALJ must first consider the question-whether the range of work the plaintiff could perform was so significantly diminished as to require the introduction of vocational testimony.  *Samuels v. Barnhart*, 2003 WL 21108321, at *12 (S.D.N.Y.2003) (holding that the

---

[8] A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c). Examples of nonexertional limitations are nervousness, inability to concentrate, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. §§ 404.1569a(a), (c)(i), (ii), (iv), (v), 416.969a(a), (c)(i), (ii), (iv), (v); see also Rodriguez, 1998 WL 150981, at * 10, n. 12.

regulations require an ALJ to consider the combined effect of a plaintiff's mental and physical limitations on his work capacity before using the grids).

As discussed, the ALJ failed to properly assess the severity of plaintiff's mental impairments at Steps Two and Three and failed to adequately develop the record. Thus, the findings made at the fifth step of the sequential analysis are affected. The Court has already determined that remand is necessary for further proceedings with respect to plaintiff's mental functional limitations. On remand, an analysis may require the testimony of a vocational expert regarding the effect that any nonexertional impairments may have on the plaintiff's ability to perform basic work activities. *See Pronti v. Barnhart*, 339 F.Supp.2d 480, 487 (W.D.N.Y. 2004).

### CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with the above; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated:  February 17, 2012
         Albany, New York

Mae A. D'Agostino
U.S. District Judge

23